UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RUBY Y.,

            Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

            Defendant.

Case No. 20 C 4811

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Ruby Y. seeks judicial review of the final decision of the Acting Commissioner of Social Security denying her claim for disability insurance benefits ("DIB"). Ruby requests reversal of the ALJ's decision with an award of benefits or alternatively, a remand. The Commissioner seeks an order affirming the decision. Because the ALJ's decision is supported by more than a scintilla of evidence, the Court affirms the ALJ's decision.

## BACKGROUND

Ruby applied for DIB on September 19, 2017, alleging disability since August 15, 2017 due to rheumatoid arthritis ("RA"), hypertension, hypercholesterolemia, inflammatory polyarthropathy, elevated liver function, and attention deficit hyperactivity disorder. Born on August 3, 1958, Ruby was 59 years old as of her alleged onset date. Ruby was diagnosed in June 2014 with rheumatoid arthritis, primarily affecting her hands, wrists, feet, and ankles. At the hearing held on July 1, 2019, Ruby testified that she was taking Xeljanz, Prednisone, Sulfasalazine, and Nabumetone for her rheumatoid arthritis. She also uses a lotion to rub on her joints. She stated that in addition to the medication she was taking for her rheumatoid arthritis, her rheumatologist prescribed Xanax for her anxiety. Ruby obtained her GED and last worked in

August 2017 as a high school hall monitor. She testified that she stopped working due to pain in her feet which described as feeling like she was walking on marbles.

On September 26, 2019, the administrative law judge ("ALJ") issued a decision denying Ruby's application. (R. 13-27). The ALJ concluded that Ruby's rheumatoid arthritis was a severe impairment but did not meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1. *Id*. at 15, 17-18. The ALJ specifically considered Listing 14.09A (inflammatory arthritis with persistent inflammation or persistent deformity). *Id*. at 17-18. The ALJ found Ruby's hypertension and anxiety to be non-severe impairments. *Id*. at 15-17. The ALJ then determined that Ruby had the residual functional capacity ("RFC") to perform light work except that she can: occasionally climb ladders, ropes or scaffolds; frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; and frequently handle and finger bilaterally. *Id*. at 18-26. Based on the vocational expert's testimony, the ALJ found that Ruby is able to perform her past relevant work as a school hall monitor as generally and actually performed. *Id*. at 26-27.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education,

and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) ("Substantial evidence is not a high threshold."). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

Construed liberally, Ruby appears to raise several conclusory challenges to the ALJ's decision: (1) the ALJ erred by failing to find that she met or equaled Listing 14.09A; (2) the ALJ erred by failing to give greater weight to the opinion of her treating rheumatologist, Dr. Robert Hozman; (3) the ALJ erred in failing to find her subjective symptoms were likely to reduce her capacity to no greater than the sedentary level; and (4) the ALJ improperly assessed her physical RFC. Ruby's arguments are largely perfunctory and undeveloped, and therefore waived. *Overton v. Saul*, 802 F. App'x 190, 193 (7th Cir. 2020); *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal

authority."). Even if her perfunctory arguments were not waived, the Court finds that none of her arguments have merit.

## A.      Listing 14.09A

Ruby's opening brief quotes the ALJ's step three finding that Ruby's rheumatoid arthritis does not meet or equal Listing 14.09A and then asserts that the ALJ relied on Dr. Hozman's August 16, 2017 treatment notes to deny her application while supposedly neglecting the remainder of Dr. Hozman's records. Doc. 17 at 7. The Court finds this argument waived because it is perfunctory, undeveloped, and unsupported by legal authority. *Krell*, 931 F.3d 582, 586 n. 1. Regardless of waiver, later in her decision, the ALJ did discuss Dr. Hozman's treatment notes dating from May 2017, which predated the August 15, 2017 alleged onset date, through March 2019. (R. 20-24); *Rice v. Barnhart¸* 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole."). Elsewhere, the ALJ also found "generally persuasive" the opinions of the state-agency physicians, who found that Ruby did not meet or equal listing 14.09. (R. 26, 71, 81); *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (ALJ may rely properly reply upon the opinions of the state agency physicians in deciding whether a claimant meets or equals a listing at Step 3). Because Ruby fails to explain why she meets or equals the listing or why the ALJ's analysis was incorrect, she has provided no basis for disturbing the ALJ's step three finding. Doc. 17 at 7-8. *See Sosinski v. Saul*, 811 F. App'x 380, 381 (7th Cir. 2020) (holding that, even if the ALJ does not "offer more than perfunctory analysis of the listing[,] . . . we do not reverse if the claimant fails to show that [she] meets the criteria for that listing"); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) ("claimant bears the burden of proving [her] condition meets or equals a listed impairment.").[1]

---

[1]      The Court notes that the ALJ misstated the requirements of Listing 14.09A, stating that it required joint inflammation or deformity in *two or more major joints* resulting in the inability to ambulate effectively

**B.      Treating Rheumatologist's Opinion**

Ruby also challenges the ALJ's evaluation of the medical opinion of Dr. Hozman that she was incapable of performing even sedentary work.[2]  Given Ruby's filing date, the ALJ's evaluation of the medical opinion evidence was subject to new regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017).  Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  An ALJ is required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b).  The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c).  Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a).  An ALJ must explain how she considered the factors of supportability and consistency in her decision, but she is not required to explain how she considered the other factors (such as the provider's specialization). 20 C.F.R. § 404.1520c(b)(2).

---

or inability to perform fine and gross movements effectively. (R. 18) (emphasis added).  In fact, Listing 14.09A requires "persistent inflammation or deformity of (1) one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively or (2) one or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(A).  Notwithstanding the ALJ's misstatement, Ruby has not shown that her rheumatoid arthritis rendered her unable to ambulate effectively or perform fine and gross movements effectively.

[2]      Ruby does not challenge the ALJ's assessment of the other opinion evidence.

5

On August 27, 2018, Dr. Hozman completed a Physical Residual Functional Capacity Questionnaire, noting that he had treated Ruby monthly for five years. (R. 504). According to Dr. Hozman, Ruby could sit for 15 minutes before needing to get up, stand for 15 minutes before needing to sit down, and walk two city blocks without rest or severe pain. *Id*. at 505. Dr. Hozman opined that Ruby could stand/walk for less than two hours in an 8-hour workday and sit less than two hours in an 8-hour workday, but Ruby would need to walk for five minutes every 10 minutes, needed unscheduled breaks every 30 minutes for five minutes, and needed to shift positions at will from sitting, standing, or walking. *Id*. at 506. Dr. Hozman also noted that Ruby could rarely lift 10 pounds and could never lift or carry 20 pounds or more. *Id*. He indicated that Ruby could rarely to occasionally look down and turn her head right or left, rarely look up, and occasionally hold her head in a static position. *Id*. at 507. Dr. Hozman found Ruby could rarely twist, stoop (bend), crouch/squat, and climb stairs and never climb ladders. *Id*. Dr. Hozman identified significant limitations with reaching, handling, or fingering in both hands, fingers, and arms, concluding that Ruby could spend only 10% of a workday grasping, turning, twisting, manipulating, or reaching for objects. *Id*. Dr. Hozman opined that Ruby's pain or other symptoms are constantly severe enough to interfere with attention and concentration needed to perform even simple work tasks. *Id*. at 505. He noted that she was incapable of even "low stress" jobs and would likely be absent from work more than four days per month as a result of her impairments. *Id*. at 505, 507.

The ALJ found the various opinions from Dr. Hozman not persuasive because they were "not supported by the medical evidence of record, including his own treatment notes." (R. 26). To support this finding, the ALJ cited to several specific examples where Ruby's medical record does not support Dr. Hozman's ultimate conclusions. Ruby does not engage with the ALJ's examples or raise any specific challenge to the ALJ's reasoning on supportability but only argues that the

opinion should have been given more weight. Doc. 17 at 4-5. Consequently, the Court considers Ruby's challenge to the ALJ's weighing of Dr. Hozman's opinion waived. Even if not waived, the Court affirms the ALJ's rejection of Dr. Hozman's opinion because she gave several sufficient examples of why she found Dr. Hozman's opinion not supported by the record as a whole. *See Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012) ("The ALJ did not err here in determining that [the treating physician's] opinion conflicted with other medical evidence, including his own treatment notes."); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, . . . or when the treating physician's opinion is internally inconsistent, . . . as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'") (citations omitted).

The ALJ provided specific and legitimate reasons, supported by more than a mere scintilla of evidence, for rejecting Dr. Hozman's opinion. First, the ALJ reasonably rejected Dr. Hozman's opinion because it conflicted with the consulting internist's report, which documented "essentially normal exam" findings. (R. 26). Consulting internist Jyothi Gondi, M.D., performed a physical examination on December 2, 2017. *Id.* at 446-50. As the ALJ noted, Dr. Gondi observed that Ruby was in no apparent distress, she was pleasant and cooperative, she exhibited no discomfort in moving about the exam room or getting on and off the exam table, and her extremities showed no edema. *Id.* at 21, 447-48. Upon examination, Ruby's testing effort was excellent and she exhibited a full range of motion at the shoulders, elbows and wrists bilaterally, her grip strength was 5/5 bilaterally with good effort, she could make a full fist and extend her hands fully, she could oppose her fingers bilaterally, she had no difficulty performing fine and gross manipulation, there was no atrophy of the hand musculature, she had full active range of motion at the hips, knees, and ankles

bilaterally, and there was no joint swelling, tenderness, warmth or erythema of the upper and lower extremities. *Id*. at 21, 448-49.  Dr. Gondi further noted that exam of Ruby's cervical spine, thoracic spine, and lumbar spine was unremarkable with full active range of motion, no muscle spasm or tenderness, and negative straight leg raising test bilaterally. *Id*. at 21, 449.  Ruby's standing and sitting posture was normal. *Id*.  Dr. Gondi also found: normal gait without the need of an assistive device; no difficulty with heel-walk, toe-walk, or tandem gait; squatting and arising done without difficulty; ability to do weight bearing with single leg balance bilaterally; and no neurological deficits (*i.e.*, 5/5 strength in the upper and lower extremities, intact sensation in the upper and lower extremities, negative Tinel's and Phalen bilaterally, etc.). *Id*.  Given Dr. Gondi's normal medical findings, the ALJ did not err in refusing to credit Dr. Hozman's opinion. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (finding no error in ALJ's discounting of treating physician's opinion "i[n] light of . . . conflicting medical opinions" from doctors who performed consultative medical examinations).

Further, as a second example, the ALJ explained that the significant limitations in Dr. Hozman's assessment conflicted with his own physical examination notes, which documented: (1) no hand swelling; (2) 5/5 strength of the upper and lower extremities; (3) no pedal edema; and (4) no neurological deficits. (R. 26); *id*. at 20-22 (citing *id*. at 385, 461, 500-01, 511, 514, 517) (Aug. 16, 2017, Oct. 4, 2017, Dec. 6, 2017, Jan. 17, 2018, May 9, 2018, June 22, 2018, July 27, 2018 visits).  Elsewhere in the RFC analysis, the ALJ discussed additional physical examination findings by Dr. Hozman that undermine the supportability of his opinion. *Id*. at 22.  For example, the ALJ noted the following findings from Ruby's May 9, June 22, and July 27, 2018 appointments with Dr. Hozman: "no tenderness to palpation, no pedal edema, no hand swelling, minimal deformity, 5/5 strength bilaterally in upper and lower extremities, no pain to palpation of paraspinal muscles

and spinal processes, no edema of the extremities, normal peripheral pulses, and no neurological deficits." *Id*. (citing *id*. at 511, 514, 517). The ALJ also recognized that on October 19, 2018, Dr. Hozman noted tenderness in the wrists, 1+ synovitis in the knees, and tenderness in the ankles but no edema of the extremities and no neurological deficits. *Id*. (citing *id*. at 527). The ALJ further noted physical examinations by Dr. Hozman "on November 29, 2018 and January 24, March 7, 2019 showed normal cervical spine, lumbar spine, and lower and upper extremity joints; 5/5 strength in the upper and lower extremities; no edema of the extremities; 2+ peripheral pulses; and grossly intact neurologic exam." *Id*. (citing *id*. at 531, 540, 543). Ruby does not dispute the ALJ's evaluation of this relevant medical evidence. Accordingly, the ALJ fairly discounted Dr. Hozman's opinions due to lack of support in his own records which document largely normal findings from August 2017 through March 2019. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion "when the opinion is inconsistent with the physician's treatment notes."); *Hinds v. Saul*, 799 F. App'x 396, 399 (7th Cir. 2020) (ALJ properly discounted treating physician's opinion that claimant suffered from constant lower lumbar pain where months earlier physician noted that claimant had normal gait and range of motion and no muscle or joint pain).

Additionally, the ALJ explained that the severity of the limitations assessed by Dr. Hozman was inconsistent with Ruby's most recent subjective reports as reflected in Dr. Hozman's own treatment notes. The ALJ wrote that Dr. Hozman's "treatment notes document[] that as of October 2018, [Ruby] has been feeling better, less achy or very well with prescribed treatment." (R. 26). This a permissible reason to reject Dr. Hozman's opinion. *Fair v. Saul*, 853 F. App'x 17, 21 (7th Cir. 2021) (ALJ properly discounted treating physician's opinion where his "own records did not support his conclusions."); *Rhonda C. v. Kijakazi*, 2022 WL 806767, at *5 (S.D. Ind. March 17,

2022) (ALJ provided sufficient support for his conclusion that treating neurologist's opinion was not persuasive by noting in part that opinion was not supported by "claimant's own statements at the time of obtaining treatment").

The ALJ gave a fourth, valid reason for rejecting Dr. Hozman's opinions. The ALJ found Dr. Hozman's opinions were not supported by other medical evidence in the record, primarily, the normal sedimentation ("sed") rate lab results during the entire treatment period despite some high rheumatoid factor readings.[3] (R. 26); *id* at 20, 22 (citing *id*. at 373, 380, 386, 462, 522, 535, 546); *see also id*. at 24 (ALJ noting "labs showing normal sed rate, but high rheumatoid factor and rheumatologic progress notes showing mostly benign findings during office visits."). [4]In assessing the supportability of Dr. Hozman's opinions, the ALJ properly relied on the fact that Ruby's lab results showed normal sed rate. *Zoch*, 981 F.3d at 602 (ALJ reasonably rejected treating physician's opinion which "conflicted with the objective medical evidence."); *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record.").

The final example the ALJ gave for finding Dr. Hozman's limitations not supported by the medical record was the fact that he "recommend[ed] that [Ruby] should exercise 3-4 times a week on March 7, 2019." (R. 26). This aspect of the ALJ's reasoning is questionable because the ALJ

---

[3]    "Sed rate, or erythrocyte sedimentation rate (ESR) is a blood test that can reveal inflammatory activity in your body. A sed rate test isn't a stand-alone diagnostic tool, but it can help your doctor diagnose or monitor the progress of an inflammatory disease." https://www.mayoclinic.org/tests-procedures/sed-rate/about/pac-20384797 (last visited April 22, 2022). Rheumatoid factors are proteins produced by the body's immune system that can attack healthy body tissue. https://www.mayoclinic.org/tests-procedures/rheumatoid-factor/about/pac-20384800 (last visited April 22, 2022). "High levels of rheumatoid factor in the blood are most often associated with autoimmune disease, such as rheumatoid arthritis and Sjogren's syndrome." *Id*.

[4]    In addition, as the ALJ noted earlier in her decision, right knee x-rays on December 2, 2017 were normal. (R. 21) (citing *id*. at 452).

did not explain how the recommendation that Ruby exercise 3-4 times a week is inconsistent with the limitations set forth in Dr. Hozman's opinion. *Burgos v. Saul*, 788 F. App'x 1027, 1031 (7th Cir. 2019) ("Nowhere, however, did the ALJ explain why [claimant] would be unable to perform these activities if he had the limitations [his treating physician] proposed."). Dr. Hozman's opinion includes a limitation to standing/walking less than two hours in an 8-hour workday. (R. 506). Exercising 3-4 times a week could be accomplished by standing/walking for less than two hours in an 8-hour period, and thus, such recommendation would not be inconsistent with the opined standing/walking limitation. As a result, the fact that Dr. Hozman suggested exercise cannot reasonably be construed as evidence that would undermine Dr. Hozman's opinion. *Johnson v. Astrue*, 338 F. App'x 3, 6 (1st Cir. 2009) (holding treating rheumatologist's recommendation of physical therapy and aerobic exercise was not necessarily inconsistent with his opinion regarding claimant's limited physical ability where "there [was] no indication of the level of physical therapy and/or aerobic exercise that [the treating physician] thought would be suitable for claimant.").

Nonetheless, even if it was error for the ALJ to construe Dr. Hozman's exercise recommendation as an inconsistency warranting a rejection of his opinion, the error was harmless because the ALJ specifically relied on several other legitimate examples of why the record evidence did not support Dr. Hozman's significant limitations, which are supported by more than a mere scintilla of evidence. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2020) (emphasizing harmless error standard applies to judicial review of administrative decisions); *Ray v. Berryhill*, 2017 WL 1397552, at *6 (N.D. Ill. April 19, 2017). Thus, Ruby has not shown that the ALJ committed reversible error in analyzing Dr. Hozman's opinion. *Id*.

**C.     Subjective Symptom Assessment**

Turning to her next challenge, Ruby argues that the ALJ improperly discounted her subjective symptom statements. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir 2022). When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). "An ALJ need not discuss every detail in the record as it relates to every factor," but an ALJ may not ignore an entire line of evidence contrary to her ruling. *Grotts*, 27 F.4th at 1278. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Id*. at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support.").

Ruby argues that her subjective symptoms are consistent with the medical record, and the ALJ erred by not finding that her symptoms reduced her work capacity to no greater than the sedentary level. Doc. 17 at 6-7. Ruby lists part of her subjective symptom testimony but does not point to a reversible error by the ALJ on this point. *Id*. Ruby's conclusory claim that the ALJ erred in her evaluation of Ruby's subjective symptom testimony is therefore waived.

Regardless, the ALJ's conclusions on Ruby's subjective complaints were not patently wrong. The ALJ found that Ruby's medically determinable impairments could reasonably be expected to produce her alleged symptoms. (R. 22). However, the ALJ also found that Ruby's statements concerning "the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record." *Id*. In support of this finding, the ALJ appropriately considered the applicable factors, including the objective medical evidence, her treatment and medications and their efficacy, and her daily activities. (R. 22-25). The ALJ explained how the objective medical evidence undermined Ruby's symptom allegations. For example, as to Ruby's allegation that she is unable to button and zip three days out of the week, the ALJ examined the record and explained how her treatment records contradict this assertion. *Id*. at 21, 24. In particular, the ALJ cited rheumatology treatment notes from October and December 2017 and January 2018 indicating that while she complained of hand and wrist pain and morning stiffness, Ruby denied any difficulty using her hands at those visits, including any difficulty with dressing herself, tying shoelaces, doing buttons, lifting a full cup or glass to her mouth, picking up clothing from the floor, and turning regular faucets on and off. *Id*. at 24, 457, 460, 499. The ALJ also discussed how examination findings at those visits showing no hand swelling, minimal deformity, 5/5 strength bilaterally in the upper extremities, and no neurologic deficits were inconsistent with allegations of the severity of her hand symptoms. *Id*. at 24, 461, 500-01.

Similarly, although Ruby testified that she was unable to work because of foot symptoms, the ALJ observed that Dr. Hozman's notes from May 2017 through May 2019 documented no abnormalities of the lower extremities or foot issues. (R. 22). The ALJ pointed out that Dr. Hozman's physical examinations consistently revealed 5/5 strength in the lower extremities, no edema of the extremities, 2+ peripheral pulses and grossly intact neurologic exams. *Id*. at 22-23. The ALJ also noted that with respect to Ruby's lower extremities, Dr. Gondi's examinations revealed: no edema; full range of motion; no joint swelling, tenderness, warmth or erythema; normal gait; 5/5/ strength; and intact sensation. *Id*. at 23. Additionally, the ALJ noted that Dr.

Gondi reported that Ruby had normal standing and sitting posture, no difficulty with heel-walk or tandem gait, and was able to squat and rise without difficulty and do weight bearing with single leg balance bilaterally. *Id*.

The ALJ also found that "earlier rheumatologic progress notes indicate that [Ruby's] RA symptoms were not optimally controlled due to compliance issues with her medications, appointments and lack of exercise." (R. 24). The ALJ cited a December 2017 treatment record reflecting that Ruby "has been doing quite well and that she has been noticing improvement in her joint pain, swelling and stiffness since taking xeljanz for the past year." *Id*. (citing *id*. at 457). The ALJ discussed how October 2018, November 2018, January 2019, and March 2019 treatment records showed that as of October 2018, Ruby "continued to report feeling well with prescribed treatment and tolerating her medications without adverse side effect." *Id*. (citing *id*. at 526, 529, 538, 541). The ALJ also cited a March 2019 record noting that Ruby "denied any complaints." *Id*. at 23 (citing *id*. at 541). The ALJ then observed that consistent with Ruby's statements about feeling well, "treatment notes show benign findings on physical examinations during most office visits, normal sed rate, and no significant changes to her medications or treatment plan." *Id*. at 24. Ruby does not challenge the ALJ's finding that her rheumatoid arthritis symptoms improved with treatment compliance or argue that the ALJ unfairly represented the record in this regard.

Regarding her activities of daily living, the ALJ noted that Ruby reported doing some cleaning and cooking, driving a car, going out alone, shopping in stores once a week, managing her finances, watching TV, reading, visiting with her mother at a nursing home twice a week, visiting with others twice a month, bathing and dressing independently, doing household chores, and driving once a week to her daughter's house. *Id*. at 25 (citing *id*. at 36, 210-14, 447). Ruby points out that she testified that: (1) every morning her feet are sore; (2) she takes medicine while

14

still in bed, which takes about an hour to work, and even then, she feels like she is walking on marbles; (3) she rarely washes dishes because they slip out of her hands easily, rarely does laundry, and does not clean floors; and (4) she has difficulty shopping because her feet become sore or her ankles start to hurt. Doc. 17 at 6-7 (citing R. 39, 40, 42, 43). Notwithstanding the ALJ's lack of obligation to discuss every piece of evidence, the ALJ did not ignore the specific evidence that Ruby claims supports the credibility of her symptoms. The ALJ considered Ruby's reports about these symptoms, noting that Ruby: (1) "reported that her feet, ankles and hands are sore" when she wakes up; (2) "said that her feet feel[] like she is walking on marbles;" (3) "complained of morning stiffness;" (4) "takes her medications when she is still in bed" and "it takes about 1 hour before her medication works;" (5) "does not wash the dishes often because things slip out of her hands easily and she breaks the dishes;" (6) "occasionally does laundry by taking things out of the dryer and folding them;" (7) "does not clean floors;" and (8) "has difficulties at the store" and "has to leave partway through the store because her ankles and feet hurt." *Id*. at 18, 19.

In essence, Ruby appears to complain about the ALJ's weighing of the evidence regarding her subjective symptoms, but the Court cannot reweigh the conflicting evidence. *Grotts*, 27 F.4th at 1279 (rejecting claimant's criticism of the "ALJ's analysis of her daily functioning, her good and bad days, and her pain" as improperly inviting the Court to reweigh the evidence). While Ruby may disagree with how the ALJ weighed the evidence in assessing the severity and frequency of her symptoms, the ALJ addressed the relevant evidence in her decision and provided "specific reasons supported by the record" to support her subjective symptom determination. *Id*. Given the record evidence of "earlier notes showing suboptimal control of [Ruby's] RA symptoms due to some compliance issues, but subsequent notes showing generally good control of her RA symptoms with compliance to prescribed treatment; labs showing normal sed rate, but high

rheumatoid factor and rheumatologic progress notes showing mostly benign findings during office visits []; conservative and routine care the claimant received during the entire treatment period; no ER or inpatient care for any complaints of flare-ups; [and] daily activities reported by [Ruby]" the ALJ reasonably found that the limitations resulting from Ruby's rheumatoid arthritis were not as severe as she alleged. (R. 24-25). The Court therefore finds that the ALJ's subjective symptom analysis was not patently wrong and defers to it. *Apke v. Saul*, 817 F. App'x 252, 258 (7th Cir. 2020).

### D. RFC Determination

Finally, Ruby argues that the ALJ's RFC determination of a reduced range of light work with certain postural and manipulative restrictions lacks the support of substantial evidence. Specifically, Ruby argues that the ALJ (1) failed to account for the fact that she is unable to sustain work on a full-time basis because of her fluctuating rheumatoid arthritis symptoms, (2) disregarded evidence related to her rheumatoid arthritis, and (3) impermissibly "played doctor." The ALJ did not err on any of these grounds.

"The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). In addition, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Jenke v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020). "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). However, the ALJ need only include restrictions in the RFC that are

"supported by the medical evidence and that the ALJ found to be credible." *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011). It was Ruby's burden to establish not just the existence of her rheumatoid arthritis condition but also to provide evidence that it supported "specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018).

Ruby first contends that the ALJ did not consider that her "disease process prevents the performance of light work on a 5 day per week, 8 hour basis." Doc. 17 at 3. According to Ruby, in assessing her RFC, the ALJ "failed to take into account the chronicity and lability of [her] rheumatoid disease." *Id*. at 6. The vocational expert indicated that no jobs would be available if a person was off task more than 15% of the workday and absent more than 1.5 days every month. (R. 52).

In assessing Ruby's RFC for light work with some postural and manipulative limitations, the ALJ relied on the medical record, including treatment notes and treatment history, the exam results of the consulting internist, the opinions of the state agency medical consultants, Ruby's reported activities of daily living, and her testimony.[5] Contrary to Ruby's first RFC challenge, the ALJ expressly considered the fluctuating nature of Ruby's symptoms in her assessment of both Ruby's subjective symptoms and her RFC. In her decision, the ALJ explicitly noted Ruby's testimony about having good and bad days as well as her allegations of rheumatoid arthritis flare-ups. *See* (R. 19, 23) ("The claimant stated that during a typical bad day, she spends most of the day in bed because it hurts so much everywhere."); *id*. ("She stated that in a week, she has 1 or 2 bad days."); *id*. ("The claimant testified that she does not take a shower and does not get dressed if she is having a bad day."); *id*. ("On functional limitations, the claimant reported that on a good

---

[5]    Because Ruby does not challenge the ALJ's assessment of her mental functioning and the RFC as it relates to her non-severe mental impairment of anxiety, the Court limits its discussion to the evidence relating to Ruby's physical impairments.

day, she can walk the dog around the block and sometimes will suffer from that because she has over done it."); *id*. ("She stated that on a bad day, she cannot stand, but on a good day, she can stand for 10 minutes."); *id*. at 20, 23 ("When she has a flare, she said that everything swells and it gets to the point where she cannot even think straight."); *id*. at 22 (On March 7, 2019, "[s]he did report a flare up in the left knee about 2 weeks" prior).

However, the ALJ reasonably determined that Ruby's statements about her bad days and flares were not supported by the rheumatology treatment notes and Ruby's reported activities. (R. 23, 24, 25). For example, the noted that Dr. Hozman's treatment notes do not reveal that she made any reports of spending most of her days in bed due to disabling pain. *Id*. at 23. The ALJ also noted that Ruby did not mention any flare-ups of her symptoms when seen by Dr. Hozman on May 6, 2017 and August 16, 2017. *Id*. The ALJ pointed out that the treatment notes from the period December 2017 through March 2019 reflect that Ruby's symptoms improved as she was compliant with her medications. *Id*. Ruby does not challenge the ALJ's characterization of this evidence. The ALJ also noted that Ruby "mention[ed] [] a flare-up in the left knee only during her March 7, 2019 [visit], but the pain was alleviated completely after taking her husband's Vicodin." *Id*. Based on this evidence, the ALJ reasonably concluded that Ruby's "complaints of flares are inconsistent with mostly benign clinical findings reported by Dr. Hozman during most office visits, very infrequent medication changes, routine and conservative treatment recommended by the rheumatologist, lack of ER or inpatient care during the treatment period, and lack of documentation of severe symptoms and limitations during office visits." *Id*. at 23-24; *see also id*. at 24-25. Further, the record showed that Ruby engaged in multiple daily activities, such as some cleaning and cooking, driving a car, going outside alone, shopping in stores once a week, managing her finances, watching TV, reading, visiting her mother at a nursing home twice a week, visiting with

18

others twice a month, bathing and dressing independently, doing household chores, driving once a week, and going to her daughter's house. *Id*. at 25, 36, 210-14, 447.

Ruby argues that the ALJ "failed to provide a basis for disregarding contradictory medical evidence" regarding her ability to sustain full-time work, but she does not cite any specific medical or opinion evidence that does support the off-task or absenteeism limitations the ALJ rejected, other than Dr. Hozman's opinion. Doc. 17 at 10. As discussed above, the ALJ reasonably rejected Dr. Hozman's opinion that Ruby would require limitations regarding unscheduled breaks and absenteeism. On the other hand, the ALJ relied on the conclusions of the state agency physicians, Drs. Prasad Kareti and Marion Panepinto, who considered the aggregate effect of Ruby's severe and non-severe impairments and found she could sustain full-time light work but with no postural or manipulative limitations in January and April 2018, respectively. (R. 25-26, 71-73, 82-83). The ALJ found these opinions to be generally persuasive as they were consistent with the evidence at the time they reviewed the record and somewhat consistent with the evidence received at the hearing level. *Id*. at 26. Nevertheless, the ALJ determined that the overall record supported additional restrictions on Ruby's postural and manipulative capacities in the RFC determination beyond those assessed by the state agency medical consultants. *Id*. at 25, 26. "This [RFC] finding was more limiting than that of any state agency doctor [], illustrating reasoned consideration given to the evidence [Ruby] presented." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Ruby does not contest the ALJ's finding that the state agency physicians' findings were generally persuasive. 20 C.F.R. § 404.1513a(b)(1) (state agency medical consultants are "highly qualified and experts in Social Security disability evaluation."); *Grotts*, 27 F.4th at 1278. Further, the ALJ took particular note of the essentially normal results of a consultative exam Ruby had in December 2017 with Dr. Gondi. *Id*. at 26, 447-49. On this record, the ALJ's finding that Ruby was capable

19

of sustaining a reduced range of light work on a full-time basis is supported by more than a "mere scintilla of evidence," and she adequately explained how she arrived at that conclusion.

Ruby's second challenge to the RFC also has no merit. Ruby accuses that the ALJ of disregarding her subjective reports to Dr. Hozman and Dr. Hozman's objective findings at four visits on May 6, 2017, December 6, 2017, October 19, 2018, and March 3, 2019. Doc. 17 at 10-11. The RFC determination requires consideration of "all the relevant evidence in [the] case record," 20 C.F.R. 404.1520(a)(3). Contrary to Ruby's claim, the ALJ cited the exact four visits that Ruby cites in determining Ruby's RFC, indicating that she specifically considered these medical records. (R. 20, 21, 22, 23). Further, the ALJ referenced every single subjective complaint and finding Ruby identifies. *See* Doc. 17 at 10-11; (R. 20) (noting "[p]hysical examination showed decreased handgrip, some swelling in the wrists and knees, 1+ in the right ankle" on May 6, 2017); *id*. at 21(noting Ruby "complained of morning stiffness in her hands and wrist for an hour," "[s]he had intermittent joint pain in shoulders and ankles," and "[m]usculoskeletal exam showed that hips, knees and ankles were tender" on December 6, 2017); *id*. at 22 (noting [t]here was tenderness in the wrists, 1+ synovitis in the knees, and tenderness in the ankles" on October 19, 2018); *id*. at 22 (noting Ruby reported on March 7, 2019 that "[s]he took her husband's Vicodin and it completely alleviated her pain [from a left knee flare up].").  Ruby's contention that the ALJ disregarded these parts of Dr. Hozman's treatment notes is simply not true, and she is really asking the Court to impermissibly reweigh the considered evidence in her favor. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021); *Burmester*, 920 F.3d at 510 (court cannot "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.").

In another undeveloped argument, Ruby argues that the ALJ impermissibly played doctor when she "construe[d] the medical evidence contrary to both" Dr. Gondi and Dr. Hozman in constructing her RFC. Doc. 17 at 5. She offers no analysis to support this argument, and thus, it is waived. Putting aside waiver, the Court disagrees.

In determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion []." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Because an ALJ is not required to adopt any one opinion in full, the ALJ here did not play doctor simply by assigning restrictions that did not match the opinion of any specific doctor. *Whitehead v. Saul*, 841 F. App'x 976, 982 (7th Cir. 2020). As already discussed, the ALJ reasonably found Dr. Hozman's opinion that Ruby was incapable of working even a sedentary job not persuasive. The ALJ did not play doctor by finding that Dr. Hozman's opinion was not consistent with his treatment notes and other medical evidence. *See Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) ("ALJ did not err or improperly 'play doctor' by examining the medical record and determining that [a doctor's] conclusions were unsupported by his own treatment notes or contradicted by other medical evidence"). Nor did the ALJ play doctor when she found the state agency physicians' opinions generally persuasive, but then gave Ruby the "widest benefit of the doubt" and adopted greater functional limitations based on her testimony and later-admitted evidence. (R. 24-25, 26); *see Diaz v. Chater,* 55 F.3d 300, 306 n.2 (7th Cir. 1995) (rejecting argument that ALJ erroneously made a "medical judgment" in not relying solely on the opinion of physicians because the ALJ "must consider the entire record, including all relevant medical and nonmedical evidence, such as the claimant's own statements"). Regarding the consultative examiner and as the ALJ noted, Dr. Gondi did not provide an opinion, but the ALJ properly considered his essentially normal examination findings. 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional

capacity based on all of the relevant medical and other evidence."). Accordingly, as the ALJ appropriately considered the various medical opinions in the record and adequately explained her reasoning for crediting or discrediting them, she did not improperly "play doctor" in determining the RFC. *Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010) (While "[a]n ALJ may not 'play doctor' by substituting his opinion for that of a physician[,] [t]he ALJ [] is not only allowed to, but indeed must, weigh the evidence and make appropriate inferences from the record.") (internal citation omitted).

Ruby spends the final pages of her brief listing the subjective reports and objective findings from nine of her visits with Dr. Hozman and Dr. Gondi's consultative examination with no analysis or citation to relevant authority. Doc. 17 at 12-13. The heading of this portion of Ruby's brief states that "[t]he record is replete with medical entries of light work prohibitive inflammatory arthritis and pain prior to and subsequent to the alleged onset date." *Id*. at 12. However, seven of the nine Dr. Hozman visits occurred before her August 15, 2017 alleged onset date. And, as discussed above, the ALJ considered Dr. Hozman's treatment notes from May 2017 through March 2019 as well as Dr. Gondi's examination findings. (R. 20-24). Ruby does not explain how the evidence she cites warrants limitations greater than those reflected in the RFC or offer any discussion of the ALJ's opinion. Essentially, Ruby disagrees with the ALJ's interpretation of the listed evidence, but again, the Court may not reweigh the evidence as Ruby suggests. *Gedatus*, 994 F.3d at 900 (7th Cir. 2021). If the ALJ's factual findings are supported by more than a mere scintilla of evidence, the ALJ's decision must be upheld. *Biestek*, 139 S.Ct. at 1152, 1154. The Court affirms the ALJ's RFC determination because her findings are supported by more than a mere scintilla of evidence.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [17] is denied, the Acting Commissioner's Motion for Summary Judgment [22] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Acting Commissioner and against Plaintiff.

**SO ORDERED.**

Dated:  May 9, 2022

Sunil R. Harjani
United States Magistrate Judge